Douglas R. Ricks, OSB 044026
Daniel C. Bonham, OSB 183104
VANDEN BOS & CHAPMAN, LLP
319 SW Washington St., Ste. 520
Portland, OR 97204
Telephone: 503-241-4869
Fax: 503-241-3731

Of Attorneys for Debtors-in-Possession

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>PPV, Inc.<br>and<br>Bravo Environmental NW, Inc.<br><br><br><br>_____ Debtors-in-Possession. | Bankruptcy Case Nos.:<br><br>19-34517-dwh11 (Lead Case)<br><br>19-34518-dwh11<br><br>Jointly Administered Under<br>Case No. 19-34517-dwh11 |
| PPV, Inc.,<br><br>    Plaintiff,<br><br>    vs.<br><br>Libertas Funding LLC, a Connecticut<br>limited liability company, EBF Partners,<br>LLC dba Everest Business Funding, a<br>Delaware limited liability company, and<br>Retail Capital LLC dba Credibly, a New<br>York limited liability company,<br><br>    Defendants. | Adv. Pro. No. _____<br><br>COMPLAINT (Injunctive Relief) |

**VANDEN BOS & CHAPMAN, LLP**
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

## INTRODUCTION

Plaintiff PPV, Inc. is the Debtor and Debtor-in-Possession in the above-captioned case (hereinafter "Debtor" or "Plaintiff"). Debtor, by this Complaint, seeks injunctive relief prohibiting creditors Libertas Funding LLC ("Libertas"), EBF Partners LLC dba Everest Business Funding ("EBF"), and Retail Capital LLC dba Credibly ("Credibly") (collectively referred to as the "Defendants") from engaging in litigation or collection efforts against the Affiliates (as defined below) in state court or in any other forum, or taking any action whatsoever to obtain possession or control over the assets of the Affiliates, without an order of this Court.

Debtor alleges:

## PARTIES

1. PPV, Inc. is a Debtor and Debtor-in-Possession in this chapter 11 bankruptcy case which is jointly administered with the chapter 11 bankruptcy case of Bravo Environmental NW, Inc., a subsidiary of PPV, Inc.

2. Libertas Funding LLC is a limited liability company duly organized and existing under the laws of the State of Connecticut, with its principal place of business in the State of Connecticut, and duly authorized to do business in the State of Oregon. Libertas provides various types of financing, including asset-based loans, to its borrowers and clients.

3. EBF Partners LLC dba Everest Business Funding is a limited liability company duly organized and existing under the laws of the State of Delaware. EBF provides various types of financing, including asset-based loans, to its borrowers and clients.

**VANDEN BOS & CHAPMAN, LLP**
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

4.     Retail Capital LLC dba Credibly is a limited liability company duly organized and existing under the laws of the State of New York. Credibly provides various types of financing, including asset-based loans, to its borrowers and clients.

## JURISDICTION AND VENUE

5.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b) and 11 U.S.C. § 105(a). This action is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).  This proceeding is also within the Court's non-core jurisdiction, pursuant to 28 U.S.C. § 157(c)(1) as a matter otherwise related to the bankruptcy case.

6.     Venue is proper under 28 U.S.C. § 1409.

7.     This proceeding is brought pursuant to FRBP 7001(7) and 7065.

8.     Debtor is an Oregon corporation.

9.     On December 10, 2019, Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Petition Date").

10.     This is an adversary proceeding pursuant to 11 U.S.C. § 105(a) to request the Court issue a preliminary injunction to enjoin and prohibit Libertas from commencing or continuing its efforts to collect from the Affiliates.

## BACKGROUND OF THE DEBTOR AND ESTATE ASSETS

9.     James Thuney is the Chief Executive Officer of PPV, Inc., and oversees all operations. As CEO, James Thuney is responsible for directing the company's operations, the company's reorganization, along with other duties too numerous to describe.  James Thuney is engaged full-time with the operation and reorganization of the Debtor.

10.     Joseph Thuney is the President of PPV, Inc., and oversees all operations along with James Thuney. As President, Joseph Thuney, along with James Thuney, is

**VANDEN BOS & CHAPMAN, LLP**
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

responsible for directing the company's operations, the company's reorganization, along with other duties too numerous to describe. Joseph Thuney is engaged full-time with the operation and reorganization of the Debtor.

11.     James Thuney and Joseph Thuney are collectively referred to as the "Affiliates."

12.     Debtor operates a waste-water disposal operation headquartered in Multnomah County, OR. Debtor's waste-water disposal services and other products are provided to the public.

13.     Libertas's claim against Debtor totals approximately $453,333.00 on the Petition Date. EBF's claim against Debtor totals approximately $271,269.00 on the Petition Date. Retail Capital LLC's claim against Debtor totals approximately $126,621.00 on the Petition Date.

14.     On February 21, 2019, Affiliates executed a Receivables Purchase Agreement (the "Credibly Agreement") with Retail Capital LLC dba Credibly as individuals guaranteeing PPV's performance under the Credibly Agreement. The Debtor therefore requests injunctive relief to prohibit Credibly from initiating litigation or collection actions against the Affiliates.

15.     On August 5, 2019, Affiliates executed a Payment Rights Purchase and Sale Agreement (the "EBF Agreement") with EBF as individuals guaranteeing PPV's performance under the EBF Agreement. The Debtor therefore requests injunctive relief to prohibit EBF from initiating litigation or collection actions against the Affiliates.

16.     On September 23, 2019, Affiliates executed an Agreement of Sale of Future Receipts (the "Libertas Agreement") with Libertas as individuals guaranteeing PPV's performance under the Libertas Agreement. Paragraph 29(c) of the Agreement holds that

**VANDEN BOS & CHAPMAN, LLP**
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

upon the occurrence of an event of default, Libertas may enforce its rights under the Agreement by:

> "Filing the affidavit of confession of judgment (the "Affidavit") executed by the Guarantor(s), individually and on Merchant's behalf, in connection with this Agreement in the amount of the undelivered portion of the Sold Amount of Future Receipts, plus the Reasonable Damages, enter the judgment with the Clerk of the Court, without notice, and execute thereon."

The Debtor, therefore, requests injunctive relief to prohibit Libertas from filing such an affidavit or commencing other litigation or collection actions against the Affiliates.

## DEBTOR'S PLAN OF REORGANIZATION

17.     The anticipated plan of reorganization will provide for the Debtor to continue its business operations.

18.     The Affiliates are integral to the Debtor's day-to-day business operations.

19.     The Affiliates participation and involvement in the daily operation of the Debtor are essential for the success of the reorganization.  If the Affiliates are disrupted from their duties in the reorganization of the debtor by the litigation (and its attendant discovery preparation, depositions, numerous meetings with counsel, requisite mediation and pre-trial hearings, et al.), the prospect of a successful reorganization will be in doubt.

20.     In addition, the Debtor's operations and plan of reorganization will require contributions of money or money's worth from the Affiliates.  Their contributions will have significant value to the Debtor's bankruptcy estate.

21.     The Affiliates' complete and total cooperation in contributing the assets for the payments of claims of all creditors in this case is essential to the Debtor's ongoing efforts to propose a confirmable plan that is in the best interest of all creditors and the estate. Requiring the Affiliates to defend claims asserted against them during the bankruptcy case

**VANDEN BOS & CHAPMAN, LLP**
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

would both interfere with and irreparably impair the Debtor's ability to accomplish those goals.

22.     If the Affiliates are forced to spend time and resources defending lawsuits or collection actions brought against them by the Defendants in order to protect themselves and their assets, those assets will necessarily be depleted by defense costs and the Affiliates' ability to contribute those assets to a plan and this case could be severely limited.

23.     The assets which the Affiliates will contribute to the Debtor are essential to ensure a plan that provides for the maximum distribution to creditors.  Without those assets, it is very likely the estate will have insufficient assets to pay all claims in full.

24.     The Debtor anticipates that its chapter 11 plan will be filed on or before April 8, 2020.

**CLAIM FOR RELIEF**
**(Preliminary Injunction Pursuant to § 105(a))**

25.     Debtor hereby repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein and incorporates the same herein by this reference.

26.     A bankruptcy court has the power of issue any order, process or judgment necessary to carry out the provisions of the Bankruptcy Code.

27.     Pursuant to § 105(a), the bankruptcy court may issue an order staying actions against non-debtor entities.

28.     Libertas's potential filing of affidavits of confession of judgment against the Affiliates or the commencement of any collection action or litigation on behalf of the Defendants against the Affiliates will cause irreparable harm to the Debtor.

**VANDEN BOS & CHAPMAN, LLP**
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

29. The interests of the Debtor and the Affiliates are inextricably intertwined, and any collective action or litigation action against the Affiliates will distract the Affiliates from participating in the reorganization process to the detriment of the estate and all of the creditors.

30. Unless enjoined, the Defendants' conduct will irreparably harm the Debtor by depleting or eliminating a crucial source of funding to pay claims.

31. Debtor anticipates that its plan of reorganization, including the contributions of the Affiliates, will allow it to repay 100% of all outstanding debts, including the Defendants' allowed claims.

32. The Debtor has a reasonable likelihood of a successful reorganization.

33. Plaintiff and the Affiliates are entitled to preliminary injunctive relief enjoining the Defendants from taking any action to pursue their claims against the Affiliates.

34. The injunctive relief requested herein will not prejudice or harm the Defendants.

35. Issuance of injunctive relief will serve the public interest in that it will protect the integrity of the Chapter 11 process and the goal of equal distribution to all similarly situated creditors.

36. Debtor lacks an adequate remedy at law. If Libertas's filing of the affidavit of judgment as contemplated in the Agreement is permitted to proceed, or if the Defendants are allowed to bring other litigation or collection actions against the Affiliates, it will result in the loss to the estate of the Affiliates assets, the disruption or possible failure of the reorganization effort, and the Debtor will not have the ability to utilize those same assets in a plan to provide an equal distribution to all similarly situated creditors.

**VANDEN BOS & CHAPMAN, LLP**
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

WHEREFORE, the Debtor respectfully requests relief as follows:

1.      An Order, substantially in the form of the Proposed Order attached hereto as **Exhibit A**, granting preliminary injunctive relief enjoining and prohibiting the Defendants from engaging in litigation or collection efforts against the Affiliates without an order of this Court, pending confirmation of a plan;

2.      An Order, substantially in the form of the Proposed Order attached hereto as **Exhibit A,** staying Libertas from filing an affidavit of confession of judgment with the Clerk of the Court as contemplated in the Libertas Agreement; and

3.      For such other and further relief as the Court deems just and proper.

Respectfully submitted;

DATED: <u>December 31, 2019</u>          VANDEN BOS & CHAPMAN, LLP


By:<u>/s/Douglas R. Ricks</u>
    Douglas R. Ricks, OSB #044026
    Of Attorneys for Debtors-in-Possession

**VANDEN BOS & CHAPMAN, LLP**
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>PPV, Inc.<br>and<br>Bravo Environmental NW, Inc.<br><br><br>       Debtors-in-Possession. | Bankruptcy Case Nos.:<br><br>19-34517-dwh11 (Lead Case)<br><br>19-34518-dwh11<br><br>Jointly Administered Under<br>Case No. 19-34517-dwh11 |
| PPV, Inc.,<br><br>       Plaintiff,<br><br>    vs.<br><br>Libertas Funding LLC, a Connecticut limited liability company, EBF Partners, LLC dba Everest Business Funding, a Delaware limited liability company, and Retail Capital LLC dba Credibly, a New York limited liability company,<br><br>       Defendants. | Adv. Pro. No. _____<br><br>**[PROPOSED]** ORDER |

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

THIS MATTER came before the Court on December ___, 20___ on PPV, Inc.'s

("Plaintiff" and/or "Debtor") Motion for a Preliminary Injunction under Section 105 of the

Bankruptcy Code (Docket No. ___, the "Motion") seeking to enjoin Libertas Funding LLC,

EBF Partners LLC dba Everest Business Funding, and Retail Capital LLC dba Credibly

(collectively referred to as the "Defendants") from initiating or continuing litigation or

collection actions without an order from this Court. The Court took evidence, heard the

arguments of counsel and having entered its Findings and Conclusions Re Preliminary

Injunction (Docket No. ___), it is:

ORDERED as follows:

1.     The Motion is granted and Defendants are enjoined from commencing or

continuing litigation or collection actions subject to the conditions stated in this order,

including the filing of any affidavits of confession of judgment.

2.     The injunction will last only until Debtor confirms a plan, or 90 days from the

date of the entry of this Order, whichever is shorter.

3.     The Affiliates (as defined in the Motion) are enjoined from transferring or

otherwise disposing of any assets outside the ordinary course of business or the ordinary

course of their personal family or household affairs, so long as the injunction is in place.

4.     Motion practice not utilizing any declarations or affidavits is not enjoined,

because such practice involves lawyer effort and does not affect the guarantors other than

economically.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

###

PRESENTED BY:

VANDEN BOS & CHAPMAN, LLP

By:/s/Douglas R. Ricks
    Douglas R. Ricks, OSB #044026
    Of Attorneys for Debtors-in-Possession

**LBR 9021-1 CERTIFICATION**
I certify that I have complied with the
requirement of LBR 9021-1(a); order was attached
to Motion as a proposed order.


By:/s/Douglas R. Ricks
    Douglas R. Ricks, OSB #044026

**First Class Mail:**

PPV, Inc.
Attn: George Sullivan
4927 NW Front Ave.
Portland, OR 97201

Bravo Environmental NW, Inc.
Attn: George Sullivan
4927 NW Front Ave.
Portland, OR 97201

Libertas Funding LLC
Attn: Jessica Patrovic
382 Greenwich Ave. Ste. 2
Taftville, CT 06380

EBF Partners, LLC dba Everest
Business Funding
5 West 37th St. Ste. 1100
New York, NY 10018

Retail Capital LLC dba Credibly
4026 N Miller Road, Ste. 200
Scottsdale, AZ 85251

**Electronic Mail:**

The foregoing was served on all
CM/ECF participants through the
Court's Case Management/Electronic
Case File system

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Douglas R. Ricks, OSB #044026
VANDEN BOS & CHAPMAN, LLP
319 SW Washington St., Ste. 520
Portland, OR  97204
Telephone:  503-241-4869
Fax:  503-241-3731

　　　　Of Attorneys for Debtors-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>PPV, Inc.<br>and<br>Bravo Environmental NW, Inc.<br><br><br><br>　　　　Debtors-in-Possession. | Bankruptcy Case Nos.:<br><br>19-34517-dwh11 (Lead Case)<br><br>19-34518-dwh11<br><br>Jointly Administered Under<br>Case No. 19-34517-dwh11 |
| PPV, Inc.,<br><br>　　　　Plaintiff,<br><br>　　　　vs.<br><br>Libertas Funding LLC, a Connecticut limited liability company, EBF Partners, LLC dba Everest Business Funding, a Delaware limited liability company, and Retail Capital LLC dba Credibly, a New York limited liability company,<br><br>　　　　Defendants. | Adv. Pro. No. _____<br><br>DECLARATION OF JAMES THUNEY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR ORDER TO SHOW CAUSE |

DECLARATION OF JAMES THUNEY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR ORDER TO SHOW CAUSE

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

I, James Thuney, declare:

1.      Except as otherwise stated herein, I make this declaration based on my own personal knowledge, from my review of the books and records of the Debtor, and on information and belief.  I am over 18 years of age and competent to testify to the matters stated herein.

2.      I am the Chief Executive Officer of the Debtor.

3.      Debtor operates a waste-water disposal operation headquartered in Multnomah County, OR. Debtor's waste-water disposal services and other products are provided to the public.

4.      Debtor has engaged in continued business operations as Debtor-in-Possession.  The Debtor is generating revenue and paying its post-petitions debts in the ordinary course of business.

5.      Libertas Funding LLC, EBF Partners LLC dba Everest Business Funding, and Retail Capital LLC dba Credibly (collectively referred to as the "Defendants") each have a receivables purchase agreement with the Debtor in which Joseph Thuney and I are guarantors.

6.      On February 21, 2019, Joseph Thuney and I executed a Receivables Purchase Agreement with Retail Capital LLC dba Credibly as individuals guaranteeing PPV's performance under the Credibly Agreement.

7.      On March 4, 2019 and August 5, 2019, Joseph Thuney and I executed Payment Rights Purchase and Sale Agreements with EBF as individuals guaranteeing PPV's performance under the EBF Agreements.

Page 2 of 4        DECLARATION OF JAMES THUNEY IN SUPPORT OF MOTION FOR
                   TEMPORARY RESTRAINING ORDER AND MOTION FOR ORDER TO
                   SHOW CAUSE

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 19-03138-dwh    Doc 1    Filed 12/31/19

8.      On September 23, 2019, Joseph Thuney and I executed an Agreement of Sale of Future Receipts with Libertas as individuals guaranteeing PPV's performance under the Libertas Agreement. Paragraph 29(c) of the Agreement holds that upon the occurrence of an event of default, Libertas may enforce its rights under the Agreement by filing an affidavit of confession of judgment.

9.      Joseph Thuney and I have advised the Debtor that we are willing to make substantial contributions of value in the form of money or money's worth to aid in the reorganization and performance of a plan which will likely pay 100% of creditors in a plan proposed in Debtor's bankruptcy case.

10.     Litigation or collection actions by the Defendants against Joseph Thuney or myself would seek recovery, for the benefit of Defendants only, against many of the same assets the Joseph Thuney and I have voluntarily agreed to provide to the Debtor for payment of claims in this case.

11.     Debtor's objective is to propose a confirmable plan under which all creditors will be paid in full.  I believe that the complete and total cooperation of Joseph Thuney and myself in contributing assets as necessary to the payment of claims of all creditors in this case is essential to the Debtor's ongoing efforts to propose a confirmable plan that is in the best interest of all creditors and the estate.  I further believe that if the we are forced to spend time and resources defending lawsuits brought against us by the Defendants in order to protect our assets, those assets will necessarily be depleted by defense costs and our ability to contribute those assets to a plan in this case could be severely limited.

12.     The assets which the Joseph and I have agreed to contribute to the Debtor are absolutely essential to the Debtor's ability to propose a plan that provides for the maximum

DECLARATION OF JAMES THUNEY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR ORDER TO SHOW CAUSE

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

distribution to creditors. Based on my review of the currently available estate assets including, but not limited to, funds on deposit, inventory and work in progress, I believe it is likely the estate will have insufficient assets to pay all claims in full unless it is able to realize value from the assets which we intend to contribute.

13.     The participation and involvement of Joseph Thuney and I in the bankruptcy case are essential for the success of the reorganization. If Joseph and I are forced to spend time and resources defending lawsuits or collection actions brought against us by the Defendants in order to protect our assets, those assets will necessarily be depleted by defense costs and our ability to contribute those assets to a plan and this case could be severely limited.

14.     As President and CEO, respectively, I believe that Joseph Thuney and I are integral to the Debtor's day-to-day business operations.

15.     If Joseph and I are disrupted from our duties in the reorganization of the Debtor by the litigation, the prospect of a successful reorganization will be in doubt.

I declare under penalty of perjury under the laws of the United States of America and the State of Oregon that the foregoing is true and correct.

DATED: <u>December 20, 2019</u>

<u>/s/James Thuney</u>
James Thuney, Declarant

Page 4 of 4     DECLARATION OF JAMES THUNEY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR ORDER TO SHOW CAUSE

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 19-03138-dwh     Doc 1     Filed 12/31/19

Douglas R. Ricks, OSB #044026
VANDEN BOS & CHAPMAN, LLP
319 SW Washington St., Ste. 520
Portland, OR  97204
Telephone:  503-241-4869
Fax:  503-241-3731

Of Attorneys for Debtors-in-Possession

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Bankruptcy Case Nos.: |
| PPV, Inc.<br>and<br>Bravo Environmental NW, Inc. | 19-34517-dwh11 (Lead Case)<br><br>19-34518-dwh11<br><br>Jointly Administered Under<br>Case No. 19-34517-dwh11 |
| Debtors-in-Possession. | |
| PPV, Inc.,<br><br>Plaintiff,<br><br>vs.<br><br>Libertas Funding LLC, a Connecticut limited liability company, EBF Partners, LLC dba Everest Business Funding, a Delaware limited liability company, and Retail Capital LLC dba Credibly, a New York limited liability company,<br><br>Defendants. | Adv. Pro. No. _____<br><br>DECLARATION OF JOSEPH THUNEY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR ORDER TO SHOW CAUSE |

DECLARATION OF JOSEPH THUNEY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR ORDER TO SHOW CAUSE

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

I, Joseph Thuney, declare:

1.      Except as otherwise stated herein, I make this declaration based on my own personal knowledge, from my review of the books and records of the PPV, Inc. (the "Debtor"), and on information and belief.  I am over 18 years of age and competent to testify to the matters stated herein.

2.      I am the President of the Debtor.

3.      Debtor operates a waste-water disposal operation headquartered in Multnomah County, OR. Debtor's waste-water disposal services and other products are provided to the public.

4.      Debtor has engaged in continued business operations as Debtor-in-Possession.  The Debtor is generating revenue and paying its post-petitions debts in the ordinary course of business.

5.      Libertas Funding LLC, EBF Partners LLC dba Everest Business Funding, and Retail Capital LLC dba Credibly (collectively referred to as the "Defendants") each have a receivables purchase agreement with the Debtor in which James Thuney and I are guarantors.

6.      On February 21, 2019, James Thuney and I executed a Receivables Purchase Agreement with Retail Capital LLC dba Credibly as individuals guaranteeing PPV's performance under the Credibly Agreement.

7.      On March 4, 2019 and August 5, 2019, James Thuney and I executed Payment Rights Purchase and Sale Agreements with EBF as individuals guaranteeing PPV's performance under the EBF Agreements.

Page 2 of 4          DECLARATION OF JOSEPH THUNEY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR ORDER TO SHOW CAUSE

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 19-03138-dwh    Doc 1    Filed 12/31/19

8.      On September 23, 2019, James Thuney and I executed an Agreement of Sale of Future Receipts with Libertas as individuals guaranteeing PPV's performance under the Libertas Agreement. Paragraph 29(c) of the Agreement holds that upon the occurrence of an event of default, Libertas may enforce its rights under the Agreement by filing an affidavit of confession of judgment.

9.      James Thuney and I have advised the Debtor that we are willing to make substantial contributions of value in the form of money or money's worth to aid in the reorganization and performance of a plan which will likely pay 100% of creditors in a plan proposed in Debtor's bankruptcy case.

10.     Litigation or collection actions by the Defendants against James Thuney or myself would seek recovery, for the benefit of Defendants only, against many of the same assets that James Thuney and I have voluntarily agreed to provide to the Debtor for payment of claims in this case.

11.     Debtor's objective is to propose a confirmable plan under which all creditors will be paid in full.  I believe that the complete and total cooperation of James Thuney and myself in contributing assets as necessary to the payment of claims of all creditors in this case is essential to the Debtor's ongoing efforts to propose a confirmable plan that is in the best interest of all creditors and the estate.  I further believe that if the we are forced to spend time and resources defending lawsuits brought against us by the Defendants in order to protect our assets, those assets will necessarily be depleted by defense costs and our ability to contribute those assets to a plan in this case could be severely limited.

12.     The assets which the James and I have agreed to contribute to the Debtor are absolutely essential to the Debtor's ability to propose a plan that provides for the maximum

Page 3 of 4          DECLARATION OF JOSEPH THUNEY IN SUPPORT OF MOTION FOR
                     TEMPORARY RESTRAINING ORDER AND MOTION FOR ORDER TO
                     SHOW CAUSE

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 19-03138-dwh    Doc 1    Filed 12/31/19

distribution to creditors.  Based on my review of the currently available estate assets including, but not limited to, funds on deposit, inventory and work in progress, I believe it is likely the estate will have insufficient assets to pay all claims in full unless it is able to realize value from the assets which we intend to contribute.

13.    The participation and involvement of James Thuney and I in the bankruptcy case are essential for the success of the reorganization.  If James and I are forced to spend time and resources defending lawsuits or collection actions brought against us by the Defendants in order to protect our assets, those assets will necessarily be depleted by defense costs and our ability to contribute those assets to a plan and this case could be severely limited.

14.    As CEO and President, respectively, I believe that James Thuney and I are integral to the Debtor's day-to-day business operations.

15.    If James and I are disrupted from our duties in the reorganization of the Debtor by the litigation, the prospect of a successful reorganization will be in doubt.

I declare under penalty of perjury under the laws of the United States of America and the State of Oregon that the foregoing is true and correct.

DATED:  <u>December 20, 2019</u>

<u>/s/Joseph Thuney</u>
Joseph Thuney, Declarant

DECLARATION OF JOSEPH THUNEY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR ORDER TO SHOW CAUSE

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Douglas R. Ricks, OSB #044026
VANDEN BOS & CHAPMAN, LLP
319 SW Washington St., Ste. 520
Portland, OR 97204
Telephone: 503-241-4869
Fax: 503-241-3731

Of Attorneys for Debtors-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>PPV, Inc.<br>and<br>Bravo Environmental NW, Inc.<br><br><br><br>_____ Debtors-in-Possession. | Bankruptcy Case Nos.:<br><br>19-34517-dwh11 (Lead Case)<br><br>19-34518-dwh11<br><br>Jointly Administered Under<br>Case No. 19-34517-dwh11 |
| PPV, Inc.,<br><br>Plaintiff,<br><br>vs.<br><br>Libertas Funding LLC, a Connecticut limited liability company, EBF Partners, LLC dba Everest Business Funding, a Delaware limited liability company, and Retail Capital LLC dba Credibly, a New York limited liability company,<br><br>Defendants. | Adv. Pro. No. _____<br><br>DECLARATION OF DOUGLAS R. RICKS IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR ORDER TO SHOW CAUSE |

DECLARATION OF DOUGLAS R. RICKS IN SUPPORT OF MOTION
FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR ORDER
TO SHOW CAUSE

I, Douglas R. Ricks, declare:

1.      Except as otherwise stated herein, I make this declaration based on my own personal knowledge and on information and belief. I am over 18 years of age and competent to testify to the matters stated herein.

2.      I am the bankruptcy counsel for the Debtors-in-Possession.

3.      PPV, Inc. (the "Debtor") operates a waste-water disposal operation headquartered in Multnomah County, OR. Debtor's waste-water disposal services and other products are provided to the public.

4.      Debtor has engaged in continued business operations as Debtor-in-Possession. The Debtor is generating revenue and paying its post-petition debts in the ordinary court of business.

5.      I believe that the Court should grant the Plaintiff's Motion for Temporary Restraining Order as the Defendants are merchant cash advance (MCA) lenders, a type of lender notorious for their aggressive collection tactics which, I believe, present a very clear and present danger to the reorganization efforts of the Debtor.

6.      To wit, I have attached parts 1 and 5 of Bloomberg Businessweek's investigative series "Sign Here to Lose Everything" as **Exhibits A and B**. This investigative series highlights the ultra-aggressive collection tactics employed by MCA lenders, including the use of confessions of judgment, such as the one Libertas has against James Thuney and Joseph Thuney, which, if used, will divert funds which are to be provided by the Thuneys for use by the bankruptcy estate in its reorganization efforts and will instead be used to defend against the aggressive collection tactics likely to be deployed by the Defendants.

Page 2 of 3        DECLARATION OF DOUGLAS R. RICKS IN SUPPORT OF MOTION
                   FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR ORDER
                   TO SHOW CAUSE

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

7.      As such, in order to protect James Thuney and Joseph Thuney from aggressive collection tactics and, therefore, protect the funds to be contributed to the estate by the Thuneys which will be critical to the reorganization efforts of the Debtor, I implore the Court to grant the Motion for Temporary Restraining Order and Motion for Order to Show Cause.

I declare under penalty of perjury under the laws of the United States of America and the State of Oregon that the foregoing is true and correct.

DATED:  December 30, 2019

                    /s/Douglas R. Ricks
                    Douglas R. Ricks, Declarant

DECLARATION OF DOUGLAS R. RICKS IN SUPPORT OF MOTION
FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR ORDER
TO SHOW CAUSE

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869





Sign Here to Lose Everything

Part 1

## "I Hereby Confess Judgment"



# How an obscure legal document turned New York's system into a debt-collection machine that's chewing up small businesses across America.

Story by Zachary R. Mider and Zeke Faux
Data analysis by David Ingold and Demetrios Pogkas
November 20, 2018

**_Look out,_** the stranger on the phone warned. **_They're coming for you._**

The caller had Janelle Duncan's attention. Perpetually peppy at 53, with sparkly jewelry and a glittery manicure, Duncan was running a struggling Florida real estate agency with her husband, Doug. She began each day in prayer, a vanilla latte in her hand and her Maltese Shih Tzu, Coco, on her lap, asking God for business to pick up. She'd answered the phone that Friday morning in January hoping it would be a new client looking for a home in the Tampa suburbs.

The man identified himself as a debt counselor. He described a bizarre legal proceeding that he said was targeting Duncan without her knowledge. A lender called ABC had filed a court judgment against her in the state of New York and was planning to seize her possessions. "I'm not sure if they already froze your bank accounts, but they are RIGHT NOW moving to do just that," he'd written in an email earlier that day. He described the lender as "EXTREMELY AGGRESSIVE." Her only hope, the man said, was to pull all her money out of the bank immediately.

His story sounded fishy to the Duncans. They _had_ borrowed $36,762 from a company called ABC Merchant Solutions LLC, but as far as they knew they were paying the money back on schedule. Doug dialed his contact there and was assured all was well. They checked with a lawyer; he was skeptical, too. What kind of legal system would allow all that to happen 1,000 miles away without notice or a hearing? They shrugged off the warning as a scam.

But the caller was who he said he was, and everything he predicted came true. The following Monday, Doug logged in at the office to discover he no longer had access to his bank accounts. A few days on, $52,886.93 disappeared from one of them. The loss set off a chain of events that culminated a month later in financial






**Bloomberg Businessweek**

November 26, 2018 ● SPECIAL DOUBLE ISSUE

CASH
ADVANCE
SIGN
HERE
LOSE
EVERYTHING

Shady loans are bankrupting America's small businesses

▲ Featured in *Bloomberg Businessweek*, Nov. 26, 2018.
Subscribe now.   PHOTOGRAPHER: JAMIE CHUNG FOR
BLOOMBERG BUSINESSWEEK

borrowers get a loan, they have to sign a statement giving up their right to defend themselves if the lender takes them to court. It's like an arbitration agreement, except the borrower always loses. Armed with a confession, a lender can, without proof, accuse borrowers of not paying and legally seize their assets before they know what's happened. Not surprisingly, some lenders have abused this power. In dozens of interviews and court pleadings, borrowers describe lenders who've forged documents, lied about how much they were owed, or fabricated defaults out of thin air.

"Somebody just comes in and rips everything out," Doug said one evening in August, pulling up a stool at a Starbucks and recounting the events that

ruin. Not long after her agency went bankrupt, Janelle collapsed and was rushed to the hospital, vomiting bile.

As the Duncans soon learned, tens of thousands of contractors, florists, and other small-business owners nationwide were being chewed up by the same legal process. Behind it all was a group of financiers who lend money at interest rates higher than those once demanded by Mafia loan sharks. Rather than breaking legs, these lenders have co-opted New York's court system and turned it into a high-speed debt-collection machine. Government officials enable the whole scheme. A few are even getting rich doing it.

The lenders' weapon of choice is an arcane legal document called a confession of judgment. Before

**Janelle and Doug Duncan**

**"Somebody just comes in and rips everything out.**

Exhibit A - Page 3 of 15
Case 19-03138-dwh    Doc 1    Filed 12/31/19

killed the Duncans' business. After a long day spent selling houses for another company, the name tag pinned to his shirt had flipped upside down like a distress signal. "It's cannibalized our whole life."

**It's cannibalized our whole life"**



Bloomberg

▶ "I Hereby Confess Judgment" Read Aloud

Share

23:49

Cookie policy

**Confessions of judgment have been part of English common law since the Middle Ages**, intended as a way to enforce debts without the fuss and expense of trial. Concerns about their potential abuse are almost as old. In Charles Dickens's 1837 novel *The Pickwick Papers*, a landlady who's tricked into signing one ends up in debtors' prison. Some U.S. states outlawed confessions in the middle of the 20th century, and federal regulators banned them for consumer loans in 1985. But New York still allows them for business loans.

For David Glass, they were the solution to a problem: People were stealing his money. Among the hustlers and con men who work the bottom rungs of Wall Street, Glass is a legend. Before he was 30, he'd inspired the stock-scam movie *Boiler Room*. Later busted by the FBI for insider trading, he avoided prison by recording incriminating tapes of his old colleagues. Even his enemies say Glass, who declined to comment for this story, is one of the sharpest operators they've ever dealt with.

In 2009, while still on probation, Glass and a friend named Isaac Stern started a company called Yellowstone Capital LLC. (ABC, the firm that wiped out the Duncans, is one of more than a dozen corporate names used by Yellowstone's sales force.) Operating out of a red-walled office above an Irish bar in New York's

financial district, these salespeople phoned bodegas and pizzerias and pitched their owners on loans. The rates sometimes exceeded 400 percent a year, and daily payments were required, but borrowers were desperate.

# A Confessions Boom

Judgments by confession in favor of merchant cash-advance companies in New York state

Loading...

Note: Totals by quarter
Source: Bloomberg News analysis of New York State Unified Court System documents

In the aftermath of the financial crisis, banks were cutting back on lending just when small businesses most needed cash. Companies such as Yellowstone stepped in. They got around lending regulations by calling what they did "merchant cash advances," not loans–a distinction judges recognize though there's little practical difference. The same people who'd pushed stock swindles in the 1990s and subprime mortgages a decade later started talking small businesses into taking on costly debt. The profits were huge, and the industry grew. Last year it extended about $15 billion in credit, according to an estimate by investment bank Bryant Park Capital.

Yellowstone would hire anyone who could sell. A nightclub bouncer sat next to ultra-Orthodox Jews fresh out of religious school. The best brokers earned tens of thousands of dollars a month, former employees say; others slept at the office, fought, sold loose cigarettes, and stole from each other. A video posted on YouTube shows Glass firing an employee. "Get the f--- out of my firm," he yells. "Why are you still sitting there, fat ass? Get out of my company!" To keep the troops focused, management would stack a pile of cash on a table and hold a drawing for closers.

Glass's problem was that some borrowers took Yellowstone's money with no intention of paying it back. Lawsuits against deadbeats proved pointless, dragging on for months or years. Then a lawyer who worked for Yellowstone and other cash-advance outfits came up with the idea of requiring borrowers to sign confessions of judgment before receiving their loans. That way, at the first sign of trouble, lenders could start seizing assets, catching borrowers unawares.


In May 2012, Yellowstone became what appears to be the first company in the industry to file a confession in court. Others copied the trick. The innovation didn't just make collections easier; it upended the industry's economics. Now, even if a borrower defaulted, a company stood a chance of making a full recovery. By tacking on extra fees, it might even make more money, and faster, than if the borrower had never missed a payment. In some cases, the collections process became a profit engine.

Confessions aren't enforceable in Florida, where the Duncans signed theirs. But New York's courts are especially friendly to confessions and will accept them from anywhere, so lenders require customers to sign documents allowing them to file there. That's turned the state into the industry's collections department. Cash-advance companies have secured more than 25,000 judgments in New York since 2012, mostly in the past two years, according to data on more than 350 lenders compiled by *Bloomberg Businessweek*. Those judgments are worth an estimated $1.5 billion. The biggest filer by far, with a quarter of the cases: Yellowstone Capital.


**The Duncans' ordeal began in November 2017 with an unsolicited fax from a broker** promising term loans of as much as $1 million at a cheap rate. The couple had owned their agency, a Re/Max franchise, for three years and now had 50 employees, but they still weren't turning a profit. A planned entry into the mortgage business was proving more expensive than expected. Doing some quick math, Doug figured he could borrow $800,000 to fund the expansion, pay off some

debt, and come out with a lower monthly payment. The spam fax felt like a gift from God.

On the phone, the broker said that to qualify for a big loan, Doug would first have to accept a smaller amount and make a few payments as a tryout. He sent over the paperwork for a cash advance, not a term loan–and included confessions for both Doug and Janelle to sign. Without talking to a lawyer, they did. Why not? Doug thought. They intended to pay the money back on time.

The advance turned out to be for $36,762, repaid in $800 daily debits from their bank account starting the day after they got the money. This would continue for about three months, until they'd repaid $59,960, amounting to an annualized interest rate of more than 350 percent. A small price to pay, Doug figured–soon he'd have all the money he needed in cheaper, longer-term debt. But when he followed up the next month to inquire about the status of the bigger loan, he got no response. The trouble started soon after.

## How Confessions of Judgment Work

Loading...

A few hours after learning that their bank accounts had been frozen, the Duncans met with a local attorney, Jeffrey Dowd, in a law office squeezed between a nail salon and a transmission shop. Their bank, SunTrust, refused to tell them who was behind the freeze. It wasn't clear why Yellowstone would target them. Their contact there was still pleading ignorance; the lender had collected its $800 payment as recently as the previous business day. Janelle was on the verge of tears.

A broad-shouldered man with a white goatee, Dowd handles everything from wills to lawsuits for small-business owners in the Tampa suburbs. After assuring the Duncans he'd get to the bottom of it, he logged on to his computer. He soon found a legal website showing that Yellowstone had won a judgment against the Duncans a few hours after Janelle received the warning phone call. The lender had gone to a court in the village of Goshen, 60 miles north of New York City.

"I hereby confess judgment," read the documents Doug and Janelle had signed. Attached was a statement signed by the same person at Yellowstone who'd assured Doug everything was fine. It said the Duncans had stopped making payments.

That wasn't true. The Duncans' bank records show that Yellowstone had continued to get its daily $800 even after going to court. The company's sworn statement also inflated the size of the couple's debt. But by the time Dowd found the case, it was already over. A clerk had approved the judgment less than a day after Yellowstone's lawyer asked for it. No proof was demanded, no judge was involved, and the Duncans didn't have a chance to present their side in court.

Beau Phillips, a Yellowstone spokesman, said in an email to *Businessweek* that the company was within its rights, because the Duncans had blocked one payment and never made up for it. The Duncans respond that if a block had taken place, it must have been a computer error. Why stop paying and then resume the next day?

The court papers revealed the name of Yellowstone's lawyer, and on a whim, Dowd searched for her other cases and found more than 1,500 results. The Duncans' predicament was no aberration. "It was like a rabbit hole," Dowd says. He dove in, clicking on case after case after case.

## The Long Reach of a Rubber Stamp

In one month, a single clerk's office in Orange County, New York, issued 176 judgments against small businesses in 38 states and Puerto Rico

Loading...

**Goshen, N.Y., is a bucolic stop on the harness-racing circuit, just west of the Hudson** River. Not far from the track, in the Orange County Clerk's office, women with ID lanyards around their necks sit behind Plexiglas windows, processing pistol permits and recording deeds. One clerk prints out proposed judgments sent electronically by cash-advance companies and makes them official with three rubber stamps.

Orange is one of a handful of counties in upstate New York that together handle an outsize share of the nation's cash-advance collections. Industry lawyers pick offices known to sign judgments quickly; there's no need for the borrower or lender to have a connection to the area. In even smaller Ontario County, cash-advance filings make up about three-quarters of the civil caseload. No matter how abusive the confessions might be, clerks have no choice but to continue processing them, says Kelly Eskew, a deputy clerk in Orange County.

To obtain a judgment, a lawyer for a cash-advance company must send in the confession along with a sworn affidavit explaining the default and how much is still owed. The clerk accepts the statement as fact and enters a judgment without additional review. Once signed, this judgment is almost impossible to overturn. Borrowers rarely try. Few lawyers will take on a client whose money is already gone, and getting a ruling can take months–too long to save a desperate business. It's a trap with no escape.

Clicking around a database of New York state court records, Dowd did find some cases in which cash-advance borrowers had sought to overturn judgments. They'd almost always failed. New York judges took the view that debtors waived their rights when they signed the papers. Dowd concluded it would probably cost the Duncans $5,000 to retain a lawyer to travel to Orange County. He advised them not to bother.

It's possible that if the Duncans had tried to overturn the judgment, they would have discovered that the confessions they'd signed were later altered. The signed originals contain an apparent drafting error, failing to identify the Duncans' company as subject to the judgment, a flaw that might have prevented Yellowstone from seizing their money. In the version filed in court, someone had replaced the first two pages of each confession with the mistake corrected. Asked by *Businessweek* about the discrepancy, Phillips didn't provide an explanation.

# Altered Documents

**Exhibit A - Page 10 of 15**

Borrowers have accused Yellowstone of forgery before. Just in the past year, a Georgia contractor presented evidence in court that a confession used against him was a complete fabrication, and a Maryland trucker complained to Yellowstone that a key term in his confession had been changed after the fact, as had happened with the Duncans. The company backed off from those borrowers but faced no further consequences. Phillips declined to comment on the accusations.

While Dowd didn't challenge the ruling against the Duncans in court, he did think he could get SunTrust to help them. He told the bank that one of the couple's accounts held funds that didn't belong to them because it was used to collect rent on behalf of landlords. Dowd says a banker at the local branch wanted to help but was overruled by higher-ups. The account remained frozen. A spokesman for SunTrust declined to comment.

When Dowd finally reached Yellowstone's lawyer, she referred him to a marshal who she said was handling the case. Dowd was confused. Why would a U.S. marshal be involved? His clients weren't fugitives. He called the phone number, and somebody with a Russian accent answered.

**The person on the phone wasn't a federal official. Dowd had reached the Brooklyn** office of Vadim Barbarovich, who holds the title of New York City marshal. He'd stumbled onto an arcane feature of the city's government that's become another powerful tool for cash-advance companies.

New York's 35 marshals are government officers, appointed by the mayor, who collect private debts. They evict tenants and tow cars, city badges dangling from their necks. When they recover money, they get a fee of 5 percent. The office dates to Dutch colonial days, formed by a decree of Peter Stuyvesant's council. Fees for

the biggest jobs were initially set at a dozen stivers, less than one-tenth the price of a beaver pelt.

Barbarovich's office is in the immigrant enclave of Sheepshead Bay. Before he was appointed in 2013, he'd tracked inventory at a Brooklyn hospital and volunteered as a Russian translator. He's now the go-to marshal for the cash-advance business and has gotten rich in the process. Last year, city records show, he cleared $1.7 million after expenses.

As soon as Yellowstone had obtained its judgment against the Duncans, it had sent a copy to Barbarovich, who issued legal orders demanding money from Atlanta-based SunTrust and another bank in Alabama where the couple kept their personal funds. By law, New York marshals' authority is limited to the city's five boroughs, but a loophole vastly extends their reach: They're allowed to demand out-of-state funds as long as the bank has an office in the city, as SunTrust does. A few big banks refuse to comply with the orders, but most just hand over their customers' money.

SunTrust proved accommodating. Three days after freezing the Duncans' accounts, it took $52,886.93 and mailed a check to Barbarovich, enough to satisfy the judgment plus the 5 percent marshal's fee. Almost all of it was rent money the Duncans were holding for landlords, not their own funds. Barbarovich didn't respond to questions about the couple's case but said in an email that he follows the rules when issuing a demand for money. Phillips, the Yellowstone spokesman, said no one told the company that the money belonged to third parties until seven weeks after it was seized. Even then, Yellowstone refused to return it.

The Duncans scrambled to make up the shortfall. Doug got another, larger cash advance from a different company to keep afloat. The daily payments on that loan were too much for them to handle, though, and they were soon short of cash again. Sensing trouble, employees fled.

One evening, Janelle thought she was having a heart attack. Her pulse raced, her limbs went numb, and she grew nauseous. An ambulance rushed her to the hospital. Her heart was fine. Her insurance claim was denied.

**Unlike the Duncans, most of the dozens of borrowers interviewed by *Businessweek*** really did fall behind on their debt payments. Their experiences were no less wrenching. They spoke of divorce, of lost friendships, of unpaid medical bills.

"You can't defend yourself," says Richard Schilg, the owner of a human resources company in Ohio who borrowed hundreds of thousands of dollars with at

least six advances. "As long as you still have a business, as long you have a personal checking account, they're going to hound you. Your life is ruined by their contract." Schilg says he always tried to honor his debts. But his access to money has been so restricted by cash-advance judgments that he's had to sell furniture to buy food.

He's one of many borrowers who've received nasty threats from debt collectors. "I will make this my personal business to f--- you," a Yellowstone executive named Steve Davis told Schilg on a voicemail heard by *Businessweek*. Davis texted another: "I will watch you crash and burn." Asked about the messages, Davis says, "People defraud us. When that happens we have to do what's best for us."

Jerry Bush, who ran a plumbing business with his father in Roanoke, Va., signed confessions for at least six cash advances from companies including Yellowstone, taking one loan after another as his payments mounted to $18,000 a day. In January, Davis called him while he was accompanying his wife to a chemotherapy appointment and threatened him with the confession in a dispute over payment terms. Davis denies menacing Bush, but according to Bush's account of their conversation, Davis said he would pursue Bush until his death and take all of his money, leaving nothing to pay for his wife's treatment. Bush also says Davis then offered to send flowers to Bush's wife.

**Jerry Bush**

## "I wake up every morning afraid what else they will take. And every morning I throw up blood"

In August, Bush closed his business, laid off his 20 employees, and stopped making payments on his loans. Yellowstone never filed its signed confession in court, but other lenders went after him over theirs. One sunny day that month, he walked to a wooded area near his home, swallowed a bottle of an oxycodone painkiller, and began streaming video to Facebook. To anyone who might have been watching, he explained that he'd taken out cash advances in a failed attempt to save his business. Now the lenders had seized his accounts, Bush said, his voice wavering. One had even grabbed his father's retirement money.

"I signed 'em, I take the blame for it," he said. "This will be my last video. I am taking this on me." He asked his friends to take care of his family, then

sobbed as he told his wife and teenage son he loved them.

Someone who saw the video alerted the police. They found Bush unconscious in the woods a few hours later—he credits them with saving his life. But the pressure from his confessions of judgment hasn't relented. "I wake up every morning afraid what else they will take," he says. "And every morning I throw up blood."

Bush's contracts with Yellowstone show that the company advanced him a total of about $250,000 and that he paid them back more than $600,000. Davis, who parted ways with Yellowstone in August, says he didn't mistreat Bush or other borrowers and always followed the company's protocols. "You know why people put the blame on me is because I'm successful," he says. "It's just haters."

As for the Duncans, each morning at their house still begins with a prayer and a Bible verse. Their retirement savings evaporated with their agency, but they've been able to keep their house. They continue to believe God has a plan for every one of his children, but they've learned to trust some of those children less. "If we don't have peace from God, and we live in outrage, it destroys us," Janelle says. "So I'm choosing to have hope to start again, and we're relying on the Lord to replace what the enemy has stolen and turn it around for good."


By seizing their bank deposits, Yellowstone had managed to collect its money ahead of schedule and tack on $9,990 in extra legal fees, payable to a law firm in which it owns a stake. In about three months, the company and its affiliates almost doubled their money. At that rate of return, one dollar could be turned into 10 in less than a year.

Everyone else involved in the collection process got a slice, too. SunTrust got a $100 processing fee. Barbarovich's office got approximately $2,700, with about $120 of that passed along to the city. The Orange County Clerk's office got $41 for its rubber stamps. The New York state court system got $184.

To date, no state or federal regulator has tried to police the merchant-cash-advance industry. Its lawyers designed it to avoid scrutiny, sidestepping usury laws and state licensing requirements by keeping the word "loan" out of paperwork and describing the deals as cash advances against future revenue. And because the customers are technically businesses, not individuals, consumer protection laws don't apply, either.

With regulators sidelined and lawmakers oblivious, Yellowstone and its peers keep growing. After Glass stepped back a couple of years ago from day-to-day operations—his criminal record was making it harder to find investors—Wall Street investment bankers arranged a $120 million line of credit to finance more advances. In 2016 the company moved from its grimy downtown Manhattan offices to a shiny building in Jersey City, pocketing $3 million in state tax incentives. On Instagram, a

top salesman shows off flights on private jets, a diamond-encrusted watch, and a Lamborghini. Yellowstone advanced $553 million last year, its highest total ever.

In April, on the same day Janelle Duncan was selling the last of her office furniture, Yellowstone executives marked the company's ninth anniversary with a luncheon in Jersey City. In a celebratory email marking the occasion, Stern, the co-founder, wrote, "I am continually blown away at the success and achievements we continue to have."

**This is the first in a series of articles about the merchant cash-advance industry. Read more about how local, state and federal officials are trying to crack down on it as a result of the Bloomberg News investigation.**

▲ A stack of cash about to be raffled off to a lucky Yellowstone employee.   SOURCE: FACEBOOK

Sources: Bloomberg News analysis of New York State Unified Court System documents; U.S. Census Bureau

Design and development: Demetrios Pogkas and Christopher Cannon. With assistance from Dean Halford.

Photographs by Tristan Wheelock for Bloomberg Businessweek.

Edited by Robert Friedman and Jeremy Keehn.

Notes: To compile data on the use of confessions of judgment, Bloomberg assembled a list of more than 500 cash-advance company names from sources including industry publications and lawyer client lists. Each name was then searched on the New York State Unified Court System's electronic filing database to identify more than 30,000 civil court cases associated with these companies since 2012. Details of each case were analyzed to identify those in which the plaintiff filed a confession of judgment and the court entered a judgment in the plaintiff's favor. The dollar value of about one-third of the judgments was available in the state court database. Bloomberg estimated the value of the remainder based on those values and a random sample of more than 1,200 cases where the amount in court filings hadn't been entered in the electronic database.

Share this article:      ✉

# Fall Behind on These Loans? You Might Get a Visit From Gino

▲ Gino Gioe enters the Los Angeles office of Radiant Images on Feb. 15, 2018, captured by a surveillance camera. SOURCE: COMPLAINT FILED IN U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK.

## The unregulated cash-advance industry is reviv collection tactics of a bygone era.

By Zachary R. Mider and Zeke Faux

December 20, 2018

One afternoon in February, a tanned man in a dark suit strolled into a Los Angeles office without an appointment. He was about 5-foot-7, with a bodybuilder's physique and huge, gnarled hands. He identified himself as "Joe's cousin" and asked for the owner.

An employee at the front desk, his face turning pale, took the man to meet the boss, Michael Mansouri. The visitor demanded to know why Mansouri, whose company rents high-tech cameras to Hollywood filmmakers, had stopped making payments on a loan. Then, according to a court complaint Mansouri's company filed, he mentioned another delinquent borrower who'd been mangled in a car

crash and remarked: "These are the kind of things which strongly affect wives and children."

Mansouri says he was so shaken that he called the police. He also bought a gun and learned how to use it. "That, to me, is a threat," he says.



▲ Gino Gioe in 2012.   SOURCE: COURTESY OF NEW YORK DAILY NEWS.

For the visitor, a convicted felon named Renato "Gino" Gioe, it was just business. For six years, he traveled the country collecting debts for a Philadelphia company called Par Funding, also known as Complete Business Solutions Group Inc. The company says on its website that it has advanced $600 million to more than 2,500 businesses. The effective annualized interest rates on its advances can top 250 percent.

Par is one of a growing number of merchant cash-advance companies that offer fast money to small-business owners like truckers or restaurateurs at high rates. They get around lending regulations by saying they're not making loans–they're buying the money businesses will make in the future at a discount. Judges have upheld this loophole.

The new industry is in some ways a reincarnation of the loan-sharking rackets of a bygone era. Cash-advance companies use a legal document called a confession of judgment to stack the deck against borrowers, just as payday lenders did a century ago. Small-business lending was once infiltrated by the mob. Today it's again a magnet for crooks, including some with alleged ties to organized crime. Gioe's travels around the U.S. show how the regulatory vacuum is enabling intimidation tactics that seem like relics of a lawless past.

Ten of Gioe's unannounced visits to borrowers, from Chicago to small-town Alabama, were described in court papers and interviews with Bloomberg News. He made "threats of violence and physical harm" to employees of a California rehab center, according to one court complaint. A tire-shop owner near Boston said in another court filing he "felt that physical harm would come to me and my family" when Gioe walked into his shop in 2016 demanding immediate payment.

A third borrower, recounting Gioe's visit to his Maryland trucking company last year, described him in an affidavit as resembling "an aging but still formidable character ripped from the World Wrestling Federation" who had been sent not to negotiate but to "intimidate me into making a lump-sum payment."

**Exhibit B - Page 2 of 8**

Gioe was friendlier last month in an interview at the Wall Street office of another cash-advance firm where he now works. Over the six years he worked for Par as an independent contractor, he said, he made more than 700 surprise visits to deadbeat business owners. But don't get the wrong idea, he said. He never tried to intimidate anyone. He considers Mansouri a friend. His goal was always to work out a reasonable deal. "I don't curse," Gioe said. "I don't tell them I'm going to f--- 'em up, I'm going to beat the living s--- out of you. It doesn't make any sense."

Wearing a skintight sweater that accentuated his biceps, Gioe held forth for an hour, his mood veering from affable to bored to indignant. He spun an elaborate metaphor about an ambitious stripper and showed off a chest scar from a near-fatal motorcycle wreck.

He didn't deny his criminal past, which includes convictions for assaulting a woman, smashing a car with a baseball bat and violating a protective order. But he said he's a different man since leaving prison in 2011, settling down and focusing on his family.

"I found myself," he said. "Like, universally, organic and the whole bohemian s--- with the Tony Robbins thing. You know what I mean?"

**The boss at Par goes by the name of Joe Mack, though his real name is Joseph** LaForte and he's not Gioe's cousin. LaForte founded Par with his wife in 2011, after serving more than two years in prison for stealing $14 million in a real estate scam and running an illegal gambling operation. LaForte says he uses the alias to conceal his criminal record, which he says has dogged him even though the charges are a decade old and his loan company follows the rules.

"It's unfair that this stuff stays around forever," LaForte says. "Google my name. Look what comes up: mugshots."

LaForte has a point: The most unpleasant Google results are actually about his grandfather and uncle, both also named Joseph LaForte.

His grandfather, nicknamed "Joe the Cat," and his uncle, "Buddy," were made men in the Gambino crime family under boss John Gotti, according to George Gabriel, the lead FBI agent on the Gotti investigation. Both were loan sharks, Gabriel says.

LaForte has never been accused by prosecutors of having mob ties. Asked about the mafia, he says: "I don't believe there's any such thing."



**One comprehensive software suite to run your entire business**

ZOHO One  GET STARTED

Gioe, 51, is vague about how he connected with LaForte. "Everybody knows everybody, right?" He had an unconventional resume for a finance job. A native of Queens, New York, he spent most of the 1990s in prison after convictions for felony assault, criminal mischief, drug dealing and stealing a Jeep.

Released in 2000, Gioe turned his past into an asset: He marketed himself as a high-end personal trainer with a "jailhouse workout" honed in the joint. Men's Fitness magazine featured him as "The World's Toughest Man" in a recurring advice column. After more drug arrests and another four-year prison stretch, he mugged for a New York Daily News profile promoting his training methods.

A planned workout book never materialized, and instead Gioe joined the cash-advance business. In-person debt collection is rare in the industry, even though borrowers often fail to repay their loans. Many companies legally seize assets from delinquent borrowers by using confessions of judgment–documents in which debtors agree in advance to lose any dispute over the transactions–to short-circuit the court process.

## A Confessions Boom

Judgments by confession in favor of merchant cash-advance companies in New York state



14 cases
before 2014



2013      2014      2015      2016      2017      2018

Note: Totals by quarter
Source: Bloomberg News analysis of New York State Unified Court System documents

Par uses confessions too, but LaForte says he sent Gioe to help customers work out payment plans as an alternative to going to court. A lawyer for Par, Justin White, later said in a letter to Bloomberg News that neither LaForte nor anyone else at Par supervised Gioe's work.

"He sits down like a gentleman," LaForte says. "He would never ever do anything wrong to anybody."

Gioe said he has saved many businesses from bankruptcy. People who claim to be intimidated might be prejudiced against Italians, he said. While his newspaper and magazine profiles mentioned mob ties, he said that's not accurate.

"Ninety-nine point nine percent of the merchants are receptive to the one-on-one," Gioe said. "When I finally talk to them, they realize there is a solution."

Gioe's visits followed a pattern. He would show up unannounced, demand to speak to the owner and say he wasn't leaving until he got paid, according to the people who described the visits in court records and interviews. All of the people say Gioe seemed to be trying to intimidate them. Four say they called the police, though no charges were filed.

Mansouri, the co-founder of the movie-camera company, says Gioe chose his words carefully to scare without making explicit threats of violence. His business, Radiant Images, brought the lawsuit describing Gioe's visit as part of a dispute with Par over $2 million in debt. The case was later settled.



Gioe could be persistent. When he showed up at a beauty-supply warehouse in Chicago last year, its new owner, George Souri, told him a bankruptcy judge had ordered creditors to back off. "We don't deal with courts, we have our own ways to collect," Gioe responded, according to an affidavit Souri filed in the bankruptcy case. When Souri forbade him from speaking to the warehouse's former proprietor, Gioe remarked, "We'll go to her house and deal with her there," the affidavit states.

Gioe said the former owner had borrowed $1 million from Par with no intention of paying it back, and that he was the one who felt physically threatened by Souri, a younger man with martial-arts training. Reminded that Souri was the one who called the police on him, he said, "Yeah, can you believe it?"

Tonmoy Sharma, who runs the California rehab center, said in his court complaint that he received threatening texts from someone else connected to Par: LaForte's brother James.

James warned Sharma he was on his way to Sharma's house, according to the complaint. "You guys didn't think I was going away did you?" he texted.

▲ Texts sent by James LaForte to Tonmoy Sharma and two of his employees at a California rehab center.    SOURCE: COMPLAINT FILED IN NEW YORK COUNTY SUPREME COURT.

**Federal prosecutors in New York described James LaForte in a 2012 court memo** as an associate of the Gambino crime family. He has served time for loan sharking and having someone's car torched, and he was convicted for the same real estate scam that landed his brother in jail. White, the lawyer for Par, said that James LaForte denies having any ties to organized crime. James LaForte didn't respond to questions about the text messages.

Joseph LaForte says his brother is an outside broker for Par who sometimes helps him collect debts but isn't an employee. He says Par had a right to pursue Sharma for reneging on millions of dollars of debt.

James isn't the only alleged mobster to turn to the cash-advance business. One of his co-defendants in a 2012 racketeering case, identified by the FBI as a member of the Bonanno crime family, now brokers loans on Staten Island. And another man the FBI once called a Gambino associate works for a similar firm in lower Manhattan.

Joseph LaForte says that even though Gioe was helping borrowers, a few did complain about getting a visit. To avoid any more trouble, he says he replaced Gioe earlier this year with two women who call ahead and make appointments. He also told Bloomberg News that a story about Gioe would be inappropriate since he recently died.

▲ Joseph (left) and James LaForte.

For his part, Gioe says he's not dead and that he parted ways with Par because "the money wasn't right" and he was getting sick of the travel. He now works as a salesman for another cash-advance company and says he still does fitness coaching for a few wealthy professional women. "There's no limits," he says he tells them. "You never say 'I can't.'"

*—With assistance from Bob Van Voris*

**This is the fifth in a series of articles about the merchant cash-advance industry. Read more about how local, state and federal officials are trying to crack down on it as a result of the Bloomberg News investigation.**

Data analysis: David Ingold and Demetrios Pogkas. Design and development: Demetrios Pogkas.

Edited by Robert Friedman and John Voskuhl.

Notes: To compile data on the use of confessions of judgment, Bloomberg assembled a list of more than 500 cash-advance company names from sources including industry publications and lawyer client lists. Each name was then searched on the New York State Unified Court System's electronic filing database to identify more than 30,000 civil court cases associated with these companies since 2012. Details of each case were analyzed to identify those in which the plaintiff filed a confession of judgment and the court entered a judgment in the plaintiff's favor.

Share this article:



**What Parties Are Promising in the U.K. General Election**

Nov. 27, 2019

**Trump Investigation Guide: Impeachment, Inquiries, Lawsuits**

**How California Be America's Housing Nightmare**

Nov. 6, 2019

**New York's Top Art Auctions Expected to Tumble 24%**

Nov. 8, 2019

Nov. 22, 2019

**These Are the Bro Battlegrounds Th the U.K. Election**

Nov. 14, 2019

Douglas R. Ricks, OSB #044026
VANDEN BOS & CHAPMAN, LLP
319 SW Washington St., Ste. 520
Portland, OR  97204
Telephone:  503-241-4869
Fax:  503-241-3731

    Of Attorneys for Debtor-in-Possession


# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Bankruptcy Case Nos.: |
| PPV, Inc.<br>and<br>Bravo Environmental NW, Inc. | 19-34517-dwh11 (Lead Case)<br><br>19-34518-dwh11<br><br>Jointly Administered Under<br>Case No. 19-34517-dwh11 |
| _____ Debtors-in-Possession. | |
| PPV, Inc., | Adv. Pro. No. _____ |
| Plaintiff,<br><br>vs.<br><br>Libertas Funding LLC, a Connecticut limited liability company, EBF Partners, LLC dba Everest Business Funding, a Delaware limited liability company, and Retail Capital LLC dba Credibly, a New York limited liability company,<br><br>Defendants. | PLAINTIFF'S MOTION FOR EXPEDITED HEARING RE (1) PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER; AND (2) PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE |

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 19-03138-dwh    Doc 1    Filed 12/31/19

**MOTION**

Pursuant to FRBP 4001(b)(2), 4001(c)(2), and 9014, Plaintiff PPV, Inc. (the "Plaintiff")

hereby moves this Court for expedited hearing.  The motions upon which Plaintiff requests

expedited hearing are as follows:

1.      Plaintiff's Motion for Temporary Restraining Order; and

2.      Plaintiff's Motion for Order to Show Cause (collectively "Expedited Motions").

In support of this request, Plaintiff states as follows:

1.      Plaintiff is the Debtor in the main bankruptcy case no. 19-34517-dwh11 and

filed its Voluntary Petition under Chapter 11 of the United States Bankruptcy Code on

December 10, 2019.

2.      Plaintiff remains in possession of its assets and continues to operate its

business as Debtor-in-Possession.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      Plaintiff is in immediate and urgent need to obtain Court approval of the

Expedited Motions in order to continue to conduct business in the ordinary course, to

propose a plan of reorganization, to ensure the availability of assets of James Thuney and

Joseph Thuney (collectively the "Affiliates") for contribution to a plan of reorganization and to

ensure the continued participation and involvement in the organization of integral

management and staff.

5.      Plaintiff will suffer immediate and irreparable harm if the court does not enter

an Order enjoining the Defendants from initiating or continuing litigation or collection actions

against the Affiliates.

PLAINTIFF'S MOTION FOR EXPEDITED HEARING RE (1) PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING ORDER; AND (2) PLAINTIFF'S
MOTION FOR ORDER TO SHOW CAUSE

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

6.      Plaintiff requests that hearing be set as soon as reasonably possible.

7.      This motion is supported by Plaintiff's Complaint filed in this Adversary

Proceeding, the Declaration of James Thuney, the Declaration of Joseph Thuney, the

Declaration of Douglas R. Ricks, the Memorandum in Support of Temporary Restraining

Order and Motion for Order to Show Cause, and the Court's records and files in this

Adversary Proceeding and in the Main Case.

Dated:  <u>December 30, 2019</u>          VANDEN BOS & CHAPMAN, LLP


By:<u>/s/Douglas R. Ricks</u>
    Douglas R. Ricks, OSB #044026
    Of Attorneys for Debtors-in-Possession

Page 3 of 3    PLAINTIFF'S MOTION FOR EXPEDITED HEARING RE (1) PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING ORDER; AND (2) PLAINTIFF'S
MOTION FOR ORDER TO SHOW CAUSE

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 19-03138-dwh    Doc 1    Filed 12/31/19

Douglas R. Ricks, OSB #044026
VANDEN BOS & CHAPMAN, LLP
319 SW Washington St., Ste. 520
Portland, OR 97204
Telephone: 503-241-4869
Fax: 503-241-3731

Of Attorneys for Debtors-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>PPV, Inc.<br>and<br>Bravo Environmental NW, Inc.<br><br><br><br>       Debtors-in-Possession. | Bankruptcy Case Nos.:<br><br>19-34517-dwh11 (Lead Case)<br><br>19-34518-dwh11<br><br>Jointly Administered Under<br>Case No. 19-34517-dwh11 |
| PPV, Inc.,<br><br>       Plaintiff,<br><br>    vs.<br><br>Libertas Funding LLC, a Connecticut<br>limited liability company, EBF Partners,<br>LLC dba Everest Business Funding, a<br>Delaware limited liability company, and<br>Retail Capital LLC dba Credibly, a New<br>York limited liability company,<br><br>       Defendants. | Adv. Pro. No. _____<br><br>PLAINTIFF'S MOTION FOR<br>ORDER TO SHOW CAUSE<br><br>**EXPEDITED HEARING REQUESTED** |

   PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE
**EXPEDITED HEARING REQUESTED**

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Plaintiff, pursuant to 11 U.S.C. § 105(a), FRBP 7065, and FRCP 65, moves this Court for an order requiring Defendants to appear and show cause, if any, why a preliminary injunction should not be issued:

1.     Enjoining and prohibiting Libertas Funding LLC, EBF Partners LLC dba Everest Business Funding, and Retail Capital LLC dba Credibly (collectively referred to as the "Defendants") from engaging in litigation or collection efforts against Joseph Thuney and James Thuney (collectively referred to as the "Affiliates") without an order of this Court, pending confirmation of a plan;

2.     Staying Libertas from filing an affidavit of confession of judgment with the Clerk of the Court as contemplated in the Libertas Agreement as defined in the Motion.

The requested preliminary injunction will remain in effect pending confirmation of the reorganization plan in this case, dismissal of the case, or conversion of the case to case under Chapter 7 of the Bankruptcy Code.  This motion is support by Plaintiff's Complaint filed in this Adversary Proceeding, the Declaration of James Thuney, the Declaration of Joseph Thuney, the Declaration of Douglas R. Ricks, the Memorandum in Support of Motion for Temporary Restraining Order and Motion for Order to Show Cause, and the Court's records and files in this Adversary Proceeding and in the Main Case.

Dated: <u>December 30, 2019</u>          VANDEN BOS & CHAPMAN, LLP


By:<u>/s/Douglas R. Ricks</u>
     Douglas R. Ricks, OSB #044026
     Of Attorneys for Debtors-in-Possession

Page 2 of 2      PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE
                 **EXPEDITED HEARING REQUESTED**

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 19-03138-dwh    Doc 1    Filed 12/31/19

Douglas R. Ricks, OSB #044026
VANDEN BOS & CHAPMAN, LLP
319 SW Washington St., Ste. 520
Portland, OR  97204
Telephone:  503-241-4869
Fax:  503-241-3731

    Of Attorneys for Debtors-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Bankruptcy Case Nos.: |
| PPV, Inc.<br>and<br>Bravo Environmental NW, Inc. | 19-34517-dwh11 (Lead Case) |
| | 19-34518-dwh11 |
| | Jointly Administered Under<br>Case No. 19-34517-dwh11 |
| Debtors-in-Possession. | |
| PPV, Inc., | Adv. Pro. No. _____ |
| Plaintiff, | PLAINTIFF'S MOTION FOR<br>TEMPORARY RESTRAINING ORDER |
| vs. | **EXPEDITED HEARING REQUESTED** |
| Libertas Funding LLC, a Connecticut<br>limited liability company, EBF Partners,<br>LLC dba Everest Business Funding, a<br>Delaware limited liability company, and<br>Retail Capital LLC dba Credibly, a New<br>York limited liability company, | |
| Defendants. | |

Pursuant to 11 U.S.C. § 105(a), and FRBP 7001(7) and 7065, PPV, Inc. (the

"Debtor") moves this Court for a temporary restraining order:

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

1.      Enjoining and prohibiting Libertas Funding LLC, EBF Partners LLC dba

Everest Business Funding, and Retail Capital LLC dba Credibly (collectively referred to as

the "Defendants") from engaging in litigation or collection efforts against Joseph Thuney and

James Thuney (collectively referred to as the "Affiliates") without an order of this Court,

pending confirmation of a plan;

2.      Staying Libertas from filing an affidavit of confession of judgment with the

Clerk of the Court as contemplated in the Libertas Agreement as defined in the Motion.

The requested preliminary injunction will remain in effect pending confirmation of the

reorganization plan in this case, dismissal of the case, or conversion of the case to a case

under Chapter 7 of the Bankruptcy Code.  This motion is supported by Plaintiff's Complaint

filed in this Adversary Proceeding, the Declaration of Joseph Thuney, the Declaration of

James Thuney, the Declaration of Douglas R. Ricks, the Memorandum in Support of Motion

for Temporary Restraining Order and Motion for Order to Show Cause, and the Court's

records and files in this Adversary Proceeding and in the Main Case.

Dated:  <u>December 30, 2019</u>          VANDEN BOS & CHAPMAN, LLP


By:<u>/s/Douglas R. Ricks</u>
    Douglas R. Ricks, OSB #044026
    Of Attorneys for Debtors-in-Possession

Page 2 of 2      PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
                 **EXPEDITED HEARING REQUESTED**

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 19-03138-dwh    Doc 1    Filed 12/31/19

Douglas R. Ricks, OSB #044026
VANDEN BOS & CHAPMAN, LLP
319 SW Washington St., Ste. 520
Portland, OR  97204
Telephone:  503-241-4869
Fax:  503-241-3731

Of Attorneys for Debtors-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>PPV, Inc.<br>and<br>Bravo Environmental NW, Inc.<br><br><br><br>_____ Debtors-in-Possession. | Bankruptcy Case Nos.:<br><br>19-34517-dwh11 (Lead Case)<br><br>19-34518-dwh11<br><br>Jointly Administered Under<br>Case No. 19-34517-dwh11 |
| PPV, Inc.,<br><br>Plaintiff,<br><br>vs.<br><br>Libertas Funding LLC, a Connecticut limited liability company, EBF Partners, LLC dba Everest Business Funding, a Delaware limited liability company, and Retail Capital LLC dba Credibly, a New York limited liability company,<br><br>Defendants. | Adv. Pro. No. _____<br><br>MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR ORDER TO SHOW CAUSE |

MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY
RESTRAINING ORDER AND MOTION FOR ORDER TO SHOW CAUSE

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

# 1.    BACKGROUND FACTS

Pursuant to 11 U.S.C. § 105(a) and FRBP 7001(7) and 7065, PPV Inc. (the "Debtor") seeks a Temporary Restraining Order and Order to Show Cause against Defendants.

Debtor operates a waste-water disposal operation headquartered in Multnomah County, OR. Debtor's waste-water disposal services and other products are provided to the public. Declaration of James Thuney (hereinafter "James Thuney Decl."), ¶ 3.

James Thuney and Joseph Thuney (collectively the "Affiliates") have agreed to contribute assets to Debtor's bankruptcy case.  James Thuney Decl., ¶ 9; Declaration of Joseph Thuney (hereinafter "Joseph Thuney Decl."), ¶ 9. The Affiliates' contribution of these assets is critical to the Debtor having sufficient assets to potentially pay all creditors' claims in full. James Thuney Decl., ¶¶ 11-13; Joseph Thuney Decl. ¶¶ 11-13.

On February 21, 2019, the Affiliates executed a Receivables Purchase Agreement (the "Credibly Agreement") with Retail Capital LLC dba Credibly as individuals guaranteeing PPV's performance under the Credibly Agreement. James Thuney Decl. ¶ 6; Joseph Thuney Decl. ¶ 6. On March 4, 2019 and August 5, 2019, the Affiliates executed a Payment Rights Purchase and Sale Agreements with EBF as individuals guaranteeing PPV's performance under the EBF Agreements. James Thuney Decl. ¶ 7; Joseph Thuney Decl. ¶ 7. On September 23, 2019, the Affiliates executed an Agreement of Sale of Future Receipts (the "Libertas Agreement") with Libtertas Funding LLC as individuals guaranteeing PPV's performance under the Libertas Agreement. James Thuney Decl. ¶ 8; Joseph Thuney Decl. ¶ 8.

In order to protect the estate's ability to realize on assets proposed to be contributed to the bankruptcy estate by the Affiliates, it is imperative that an injunction be granted to

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

enjoin the Defendants from initiating any litigation or collection actions against the Affiliates.

If the Affiliates are be forced to respond to any litigation or collection actions brought against

them by the Defendants, they will be distracted from the operation of the Debtor's business

and participation in the reorganization process to the detriment of the estate and all of the

creditors.  James Thuney Decl., ¶¶ 10-15; Joseph Thuney Decl., ¶¶ 10-15.

In order to protect the Affiliates' assets from dissipation, the Court should enter an

order enjoining the creditor Defendants from pursuing their claims directly against the

Affiliates. Without such injunctive relief, the Debtor's reorganization efforts will be severely

jeopardized.

## 2.      DISCUSSION.

This Court has subject matter jurisdiction over Debtor's motion for preliminary

injunctive relief under 28 U.S.C. §§ 157 and 1334(b). Further, preliminary injunctive relief is

warranted under 11 U.S.C. § 105(a) because the Debtor will suffer irreparable injury if

Defendants are not enjoined.

## A.      THIS COURT HAS SUBJECT MATTER JURISDICTION.

The Court has subject matter jurisdiction to grant preliminary injunctive relief because

the requested relief is "related to" a proceeding under Title 11 of the United States Code.

28 U.S.C. §§ 157 and 1334(b); *In re Am. Hardwoods, Inc.*, 885 F.2d 621, 623 (9th Cir.

1989).  A civil proceeding is related to bankruptcy when "the outcome of the proceeding

could conceivably have any effect on the estate being administered in bankruptcy." *Id*.

(*Quoting In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988)).  The proceeding need not

necessarily be against the debtor or against the debtor's property.  "An action is related to

bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of

MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY
RESTRAINING ORDER AND MOTION FOR ORDER TO SHOW CAUSE

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Id*. (*Quoting Fietz*, 852 F.2d at 457).

Thus, this Court has jurisdiction over Debtors' motion to enjoin and prohibit the Defendants from engaging in litigation or collection efforts against the Affiliates without an order of this Court, pending confirmation of a plan, if those efforts "could conceivably have any effect" on the administration of the bankruptcy estate. Id.  Any attempt by the Defendants to collect against the Affiliates' assets that would be available to the estate through voluntarily contribution through a plan of reorganization will undoubtedly affect the administration of Debtor's bankruptcy estate.  Debtor's reorganization hinges upon the Affiliates' commitment to provide assets toward payment of claims in this case and of the Affiliates' continued participation and involvement in the reorganization.  If the Defendants are allowed to initiate litigation or collection actions against the Affiliates, Debtor will lose a main source of funding for its plan and Debtor will lose the Affiliates' integral day-to-day business operation participation and involvement.  Without the availability of these assets, the reorganization plan will likely fail. Absent an injunction, the Defendants may initiate litigation or collection actions against the Affiliates which would frustrate the Debtor's ability to propose a plan.  Enjoining such behavior is clearly within the Court's subject matter jurisdiction.  *In re Otero Mills, Inc.*, 25 B.R. 1018, 1021 (D. N.M. 1982) (finding subject matter jurisdiction over debtor's request for an injunction against a creditor of the debtor's shareholder when the shareholder's pledge of assets to the debtor was vital to the reorganization plan).

MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY
RESTRAINING ORDER AND MOTION FOR ORDER TO SHOW CAUSE

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**B.    INJUNCTIVE RELIEF IS APPROPRIATE.**

1.      The Debtor will be irreparably harmed without an order from this Court

providing the injunctive relief requested. Under 11 U.S.C. § 105(a), a bankruptcy court "may

issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title." Section 105(a) gives a bankruptcy court broad power to stay

proceedings that are not subject to the Section 362(a) automatic stay, but nevertheless

"threaten the integrity of the bankruptcy estate." *In re Excel Innovations, Inc.*, 502 F.3d

1086, 1093 (9th Cir. 2007) (citations omitted).  Within a bankruptcy court's Section 105(a)

authority is the power to protect a non-debtor by staying a creditor's court proceeding

against the non-debtor. *Id*. at 1093-94; *Otero Mills*, 25 B.R. at 1020- 22.

> The standard for granting Section 105(a) injunctive relief against
> a non-debtor is the same as the Ninth Circuit's standard for
> obtaining a temporary restraining order or preliminary injunction.
> The moving party must show: (1) a strong likelihood of success
> on the merits, (2) the possibility of irreparable injury to plaintiff if
> preliminary relief is not granted, (3) a balance of hardships
> favoring the plaintiff, and (4) advancement of the public interest
> (in certain cases). Alternatively, a court may grant the injunction
> if the plaintiff demonstrates *either* a combination of probable
> success on the merits and the possibility of irreparable injury *or*
> that serious questions are raised and the balance of hardships
> tips sharply in his favor.  As we have said many times regarding
> the two alternative formulations of the preliminary injunction test:
> These two formulations represent two points on a sliding scale in
> which the required degree of irreparable harm increases as the
> probability of success decreases. They are not separate tests
> but rather outer reaches of a single continuum.

*Excel Innovations, Inc.*, 502 F.3d at 1093 (*Emphasis* in original.)

        "A debtor seeking to stay an action against a non-debtor must show a reasonable

likelihood of a successful reorganization." *Id*. at 1095.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

### 3.    A SUCCESSFUL REORGANIZATION IS LIKELY.

Debtor has continued to operate its business post-petition.  The Debtor intends to propose a plan that will utilize its own assets and income, in addition to the contributions of the Affiliates, to provide the payment of all allowed claims. Full payment of all claims is unlikely without the contributions of the Affiliates or if the Affiliates are not able to devote their attention to the Debtor's day-to-day business operations. An injunction under 11 U.S.C. § 105 has been found to be appropriate in other similar circumstances.  *Otero Mills*, 25 B.R. at 1021-22 (Section 105(a) stay granted to protect non-debtor who intended to contribute assets to aid Chapter 11 plan); *see also In re Johns-Manville Corp.*, 33 B.R. 254, 263-64 (Bankr. S.D.N.Y. 1983) (Section 105 stay granted to protect non-debtors to preserve pools of insurance funds); 2 Collier on Bankruptcy, § 105.04[1][a][i] (16th 2019).

### 4.    DEBTOR WILL SUFFER IRREPARABLE INJURY
### IF THE INJUNCTION IS NOT GRANTED.

Debtor's reorganization plan is potentially doomed for failure if this Court does not grant the injunctive relief requested. If the Affiliates are forced to defend collection actions or litigation brought by the Defendants, those assets would be used to satisfy only those creditors' claims at the expense of an equal distribution to all creditors.  2 Collier on Bankruptcy, § 105.02][1][b] (injunctive relief is appropriate where "the requested injunction seeks to halt actions which if unchecked could effectively reduce assets available for reorganization or distribution to creditors").

### 5.    THE BALANCE OF HARDSHIPS TIPS IN FAVOR OF THE DEBTOR

The Debtor and all its creditors will suffer much greater harm than the Defendants if this Court denies the Debtor's request for injunctive relief.  Debtor will be unable to propose a confirmable plan if the Defendants are permitted to loot the assets for their own benefit in

an effort to receive a disproportionate recovery to that of the other creditors.  In addition, extraneous litigation or collections efforts against the Affiliates will create a disincentive for them to contribute their assets, participation, and involvement to a plan. All parties' interests will be better served by ensuring that the assets and participation remain available to provide a fair and equitable distribution to the creditors in this case than being dissipated for the benefit of only a few creditors. *See* 2 Collier on Bankruptcy, § 105.04[1][a][i] (and cases cited therein discussing reasons for staying collection (efforts against non-debtors).

In contrast, the Defendants stand to suffer little if this Court grants the injunctive relief.  As long as the Affiliates are not being forced to defend litigation or collection actions against them, and the Defendants' claims against them are preserved pending the confirmation of a plan, the Defendants will suffer no harm.  Debtor is not requesting this Court to discharge the claims against the Affiliates or to grant a permanent injunction. Rather, the Debtor is only asking this Court to temporarily stay the initiation of litigation or collection actions against persons and entities that are secondarily liable for Debtor's obligations until a Chapter 11 plan is confirmed.  If the Defendants are paid 100 percent of their claims from the bankruptcy estate, there will be no need to pursue further litigation or collection actions against the Affiliates.  If a Chapter 11 plan is not confirmed, the case will either be dismissed or converted to Chapter 7.  The assets will have been preserved, and the Defendants will thereafter be free to pursue their claims against the non-debtors.  The injunction will merely delay the enforcement of the Defendants' rights to pursue its claims until a Chapter 11 plan is confirmed.  This mere delay will not cause the Defendants to suffer any significant harm.  *Lazarus Burman Assocs. v. Nat'l Westminster Bank USA (In re Lazarus Burman Assocs.)*, 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993).

MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY
RESTRAINING ORDER AND MOTION FOR ORDER TO SHOW CAUSE

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Similar injunctions have also been granted as part of a confirmed plan, and Debtor will include such injunctive relief in its proposed plan. It would be a waste of the parties' time and money, and a waste of judicial resources to permit the initiation of litigation or collection actions against the Affiliates only to have the litigation or collection actions stayed by the confirmation order. *See In re Regatta Bay, LLC*, 406 B.R. 875 (Bankr. AZ 2009) (Denying stay pending appeal for an order confirming a Chapter 11 plan which included an injunction enjoining a creditor from pursuing claims against guarantors where the guarantors were integral to operation of the business and/or making substantial contributions of value to facilitate performance of the plan.).

## 6. PUBLIC INTEREST FAVORS REORGANIZATION THROUGH A CONFIRMED PLAN.

The public interest will be served by granting the Debtor its requested injunctive relief. "The public interest, in the context of a bankruptcy proceeding, is in promoting a successful reorganization." *Lazarus Burman*, 161 B.R. at 901 (citation omitted) Debtor seeks to propose a plan that will pay its creditors in full and allow it to emerge from bankruptcy debt free. This goal can more likely be achieved if the Court grants the injunctive relief requested. The injunction will facilitate confirmation of a plan that will benefit all creditors, thus furthering the public interest. *See id.*

## 7. BOND.

No bond is required pursuant to FRBP 7065.

MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR ORDER TO SHOW CAUSE

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

## 8. INJUNCTIONS OF THIS TYPE HAVE BEEN GRANTED IN THIS DISTRICT.

The Hon. Trish M. Brown, in a decision in the *Renaissance Custom Homes* case, granted an injunction pursuant to 11 U.S.C. § 105 that prohibits certain creditors from pursuing their claims against the debtor's principal, non-debtor guarantor. *In re Renaissance Custom Homes, LLC. v. BMC West Corp., et al*, Case No. 08-03207-tmb11, Docket # 32, entered November 12, 2008. In that case, the non-debtor guarantor agreed to contribute substantial personal assets to the debtor's estate to be used in formulating a plan of reorganization. The court found the injunctive relief requested warranted because, just as is the case here, the creditors' actions against the non-debtor guarantor and the assets of non-debtor guarantor, if allowed to continue, could seriously jeopardize the debtor's reorganization efforts. *See also In re Teufel Nursery, Inc.*, Case No. 09-34880-elp11, 2010 Bankr. LEXIS 5526, at *11 (Bankr. D. Or. 2010)

## 9. CONCLUSION.

This Court should grant Debtor's request for preliminary injunctive relief. This Court has subject matter jurisdiction over Debtor's request because any litigation or collection actions by the Defendants will affect the administration of Debtor's bankruptcy estate. Further, the Debtor has satisfied the prerequisites for obtaining preliminary injunctive relief. Debtor has shown that it is likely to obtain a successful reorganization if assets are preserved for contribution to the reorganizing debtor and the Affiliates are not jeopardized by the Defendants' conduct. Debtor will suffer irreparable injury and its reorganization efforts will likely fail if the injunctive relief requested is not granted. The balance of hardships also tips in favor of the Debtor. Finally, the public interest favors the proposal of a Chapter 11 plan that will utilize all available assets to make fair and equitable distributions to all

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

creditors. For these reasons, this Court should grant Debtor's Motion for a Temporary

Restraining Order and Order to Show Cause

Dated:  <u>December 30, 2019</u>          VANDEN BOS & CHAPMAN, LLP


By:<u>/s/Douglas R. Ricks</u>
    Douglas R. Ricks, OSB #044026
    Of Attorneys for Debtors-in-Possession

MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY
RESTRAINING ORDER AND MOTION FOR ORDER TO SHOW CAUSE

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

In re PPV, Inc. - Ch 11 Case No. 19-34517-dwh11;
In re Bravo Environmental NW, Inc. - Ch 11 Case No. 19-34518-dwh11
Adv Pro No. _____

## CERTIFICATE - TRUE COPY

DATE:         December 30, 2019

DOCUMENT:    COMPLAINT (Injunctive Relief);
DECLARATION OF JAMES THUNEY IN SUPPORT OF MOTION
FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR
ORDER TO SHOW CAUSE;
DECLARATION OF JOSEPH THUNEY IN SUPPORT OF MOTION
FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR
ORDER TO SHOW CAUSE;
DECLARATION OF DOUGLAS R. RICKS IN SUPPORT OF MOTION
FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR
ORDER TO SHOW CAUSE;
PLAINTIFF'S MOTION FOR EXPEDITED HEARING RE (1)
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER;
AND (2) PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE;
PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE;
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER;
and
MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY
RESTRAINING ORDER AND MOTION FOR ORDER TO SHOW
CAUSE

      I hereby certify that I prepared the foregoing copy of the foregoing named
document and have carefully compared the same with the original thereof and it is a
correct copy therefrom and of the whole thereof.

## CERTIFICATE OF SERVICE

      I hereby certify that I served a copy of the foregoing on:

PPV, Inc.
Attn: Joseph J. Thuney
4927 NW Front Ave.
Portland, OR  97201

Bravo Environmental NW, Inc.
Attn:  Joseph J. Thuney
4927 NW Front Ave.
Portland, OR  97201

Daniel J. Boverman
Boverman & Associates, LLC
11285 SW Walker Rd.
Portland, OR 97225

Libertas Funding LLC
Attn: Jessica Patrovic
382 Greenwich Ave. Ste. 2
Taftville, CT 06380

EBF Partners, LLC dba Everest Business
Funding
5 West 37th St. Ste. 1100
New York, NY 10018

Retail Capital LLC dba Credibly
4026 N Miller Road, Ste. 200
Scottsdale, AZ 85251

Page 1 – CERTIFICATE OF SERVICE

by mailing a copy of the above-named document to each of them in a sealed envelope, addressed to each of them at his or her last known address.  Said envelopes were deposited in the Post Office at Portland, Oregon, on the above date, postage prepaid.

I hereby certify that the foregoing was served on all CM/ECF participants through the Court's Case Management/Electronic Case File system on the date set forth below.

Dated:  December 30, 2019          VANDEN BOS & CHAPMAN, LLP


By:/s/Douglas R. Ricks_____
    Douglas R. Ricks, OSB #044026
    Of Attorneys for Debtors